IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 11-cv-03310-CMA-CBS

NE COLORADO CELLULAR, INC., d/b/a VIAERO WIRELESS,

    Plaintiff,

v.

COUNTY OF PUEBLO, COLORADO, a Colorado County acting by and through its
BOARD OF COUNTY COMMISSIONERS, consisting of
JOHN B. CORDOVA, LR.,
ANTHONY NUNEZ, and
JEFF CHOSTNER,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

In this action, Plaintiff NE Colorado Cellular, Inc., brings claims against Defendant Pueblo County, acting by and through its Board of County Commissioners, for injunctive relief under the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7)(B)(v), and Colorado's Open Meetings Law, Colo. Rev. Stat. § 24-6-401, *et seq.*  Jurisdiction is proper over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and over its state-law claim pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).  Currently before the Court are the parties' Motions for Summary Judgment.  (Doc. ## 25 and 26.)  For the reasons discussed below, Defendant is entitled to summary judgment on Plaintiff's TCA claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim.

## I. **BACKGROUND**[1]

Plaintiff provides personal wireless phone services over a network of wireless telecommunications facilities via cellular and microwave technology. Desiring to provide better coverage in the County of Pueblo, Colorado, Plaintiff chose a specific location to install a 180-foot telecommunications tower. The location is legally described as Lots 3 and 4, Block 3, Fearnoville, Second Filing (the "Site"). The Site abuts land zoned for single-family residential use, as well as a platted but unimproved street to the south and another similar street to the east. The Site is zoned A-1, which means "Agricultural Zone 1." Such a zoning classification requires a special use permit ("SUP") for the construction of a telecommunications tower.

Plaintiff submitted a SUP application on July 13, 2011. The Pueblo County Planning Commission first considered the application at an August 23, 2011 public meeting. At that meeting the Commission discussed and incorporated into the record a staff memorandum, prepared by land-use planner Gail L. Wallingford-Ingo, which recommended denying Plaintiff's SUP application. (AR 44-49; 238.) The Commission then voted to deny the application. Thereafter, Ms. Wallingford-Ingo prepared another staff memorandum, which detailed the reasons for the Commission's denial, and submitted it to the Board of County Commissioners ("BOCC"). (AR 264-268.)

Plaintiff appealed the denial, and the BOCC, at an October 6, 2011 open meeting, agreed to consider the matter on appeal. A public hearing for the appeal

---

[1] The following facts are undisputed unless otherwise noted.

was set for November 15, 2011.  Meanwhile, on October 26, 2011, Ms. Wallingford-Ingo provided the BOCC with an additional staff memorandum recommending denial of Plaintiff's SUP application.  (AR 426-436.)  Also, in anticipation of hearing Plaintiff's appeal, the BOCC held a work session with its staff on November 10, 2011.  The session was open to the public, and an agenda of the meeting, which showed that Plaintiff's SUP application would be discussed, was posted at the Pueblo County Courthouse.  The parties dispute the sufficiency of the notice provided to Plaintiff, as well as the substance of the work session.  (*See* Doc. ## 26 at 4-5 and 30 at 2.)  However, these disputes are immaterial to the Court's analysis.

At the November 15, 2011 hearing, Plaintiff made a presentation to the BOCC, and additional materials were accepted into the record, including the October 26, 2011 staff memorandum.  The BOCC voted to continue the discussion of Plaintiff's SUP application until its next public meeting on November 17, 2011.  County staff informed Plaintiff of the November 17, 2011 hearing.  At the hearing, the County Attorney, County staff, and Plaintiff's general counsel provided additional information to the BOCC.  The BOCC then voted to deny the SUP application.  At the time of the motion to deny the application, the County Attorney presented the BOCC with draft written resolutions approving and, alternatively, denying the application, so that the BOCC would have a resolution regardless of how it voted.

Following the hearing, but still on November 17, 2011, the BOCC sent Plaintiff a letter that provided formal notice of the denial of Plaintiff's SUP application.  Also, the

written resolution denying Plaintiff's SUP application was signed by the BOCC chairman at some point after the meeting (AR 591-93), and was forwarded to Plaintiff on November 22, 2011.

Plaintiff initiated this action on December 16, 2011. (Doc. # 1.) In its Amended Complaint, Plaintiff asserts two claims for relief under the TCA and one claim under Colorado's Open Meetings Law. (*See* Doc. # 18.) On August 15, 2012, the parties each submitted motions for summary judgment (Doc. ## 25 and 26),[2] which are ripe for review.[3]

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if "the evidence is such that a reasonable jury

---

[2] In its motion, Plaintiff seeks summary judgment on all three claims in its Amended Complaint (*see* Doc. # 26), whereas Defendant's motion only encompasses two of the three claims (*see* Doc. # 25). However, with regard to the "substantial evidence" claim, which is absent from Defendant's motion, Defendant indicated that its response to Plaintiff's motion should be considered a "response and cross-motion" to the substantial evidence claim. (*See* Doc. # 25 at 2.) Technically, Defendant's position violates D.C.COLO.LCivR 7.1C ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."). Here, however, the Court will treat Defendant's response to Plaintiff's motion as a cross motion on the substantial evidence claim because Plaintiff was on notice of Defendant's request that the Court do so several weeks before Defendant filed its response. (*Compare* Doc. # 25 (filed August 15, 2012), *with* Doc. # 30 (filed September 12, 2012).) Further, the parties stipulated to their motions being "Cross-Motions for Summary Judgment" and indicated that the substantial evidence claim could be fully decided based on the motions. (Doc. # 36 at 3.) Moreover, precedent indicates that the issue of substantial evidence is "appropriately decided by cross motions for summary judgment." *Sprint Spectrum v. Board of County Commissioners*, 59 F. Supp. 2d 1101, 1104 (D. Colo. 1999).

[3] The parties responded to each other's motions on September 12, 2012 (Doc. ## 29 and 30) and filed replies on September 26, 2012 (Doc. ## 31 and 32).

could return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997). A fact is "material" if, under the pertinent substantive law, it is essential to the proper disposition of the claim. *See, e.g.*, *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

A movant who bears the burden at trial must submit evidence to establish the essential elements of its claims. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002). However, when the movant does not bear the ultimate burden of persuasion at trial, "it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998)). In either scenario, if the movant meets its burden, the non-movant may not rest on its pleadings; instead, it must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-26 (1986) (internal quotation marks omitted).

When reviewing a summary judgment motion, the Court views the record, and draws all reasonable inferences therefrom, "in the light most favorable to the party opposing summary judgment." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).

## III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court will address Defendant's motion for summary judgment first. In doing so, however, the Court necessarily considers the briefing on Plaintiff's motion, as it raises the substantial evidence claim referred to in footnote 2, *supra*.

### A.     TELECOMMUNICATIONS ACT: WRITTEN DECISION REQUIREMENT

Defendant first contends it is entitled to summary judgment on Plaintiff's claim that the County violated the TCA's written decision requirement. The Court agrees.

Section 332(c)(7)(B)(iii) of the TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be in writing . . . ." The purpose of the "in writing" requirement is "to facilitate meaningful judicial review" of the decision. *United States Cellular Tel. v. City of Broken Arrow*, 340 F.3d 1122, 1135 (10th Cir. 2003); *see also Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 60 (1st Cir. 2001) (the written denial "must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons").

In the instant case, as previously mentioned, the BOCC forwarded to Plaintiff a signed resolution denying Plaintiff's SUP application after the November 17, 2011 meeting. (AR 591-93.) The resolution enumerates, in paragraph form, six reasons why the BOCC decided to deny the application. (*Id.* at 592-93.) Moreover, the final reason given in the resolution incorporates by reference Ms. Wallingford-Ingo's October 26, 2011 staff memorandum. (*Id.* at 593.) That memorandum consists of more than nine

6

single-spaced pages detailing the staff's rationale for recommending denial of Plaintiff's SUP application. (*See* AR 426-36.) As such, the Court finds that both the letter and the spirit of the TCA's "in writing" requirement were satisfied here. The resolution shows that the BOCC's decision was in writing, and the level of detail in the resolution and incorporated staff report allow the Court to conduct a meaningful judicial review – as evidenced by the Court's substantial evidence analysis in subsection B, *infra*.

The Court is not persuaded otherwise by Plaintiff's insistence that § 332(c)(7)(B)(iii) contains an additional requirement that the written decision be approved at an open meeting. The plain language of the section contains no such requirement, nor does Plaintiff cite any authority to support its bare assertion that "[i]t is axiomatic that [the] written decision must be approved at an open meeting." (Doc. # 29 at 4.) Moreover, *City of Broken Arrow*, 340 F.3d 1122, and *Sprint Spectrum v. Board of County Commissioners*, 59 F. Supp. 2d 1101 (D. Colo. 1999), both of which Defendant cites, support its assertion that the BOCC's resolution satisfies the "in writing" requirement. In *City of Broken Arrow*, the Tenth Circuit rejected a cellular carrier's claim that the court's review was limited to the reasons given on the record by a city council when voting to deny the carrier's SUP applications. 340 F.3d at 1134-35. Instead, the court looked to the written denials issued by the city council after it had voted on the applications, notwithstanding the fact that the written denials "set forth numerous reasons not contained in the voice-vote portions of the City Council meeting transcripts." *Id.* at 1134. Similarly, in *Sprint Spectrum*, Judge Miller rejected Sprint's

assertion that a board of county commissioner's oral resolution was the final action of the board and, thus, violated the TCA's "in writing" requirement. 59 F. Supp. 2d at 1105. Rather, Judge Miller reasoned that "[t]he process of the deliberative body rendering a written opinion after an oral ruling is long standing" and noted that the written opinion sent by the board's attorney was not unduly delayed. *Id.*

In any event, the record in this case demonstrates that the BOCC was fully aware of the "in writing" requirement before it voted on Plaintiff's SUP application. At the November 15, 2011 meeting, an Assistant County Attorney, Gary Raso, informed the BOCC that, regardless of the outcome of its vote, the decision "must be set forth in writing." (AR 571.) Mr. Raso later reemphasized that "the decision needs to be set forth in writing" and that, "whether you approve or deny, I think it should be put into written form . . . ." (AR 572-73.) Further, at the beginning of the November 17, 2011 meeting, the County Attorney, Dan Kogovsek, stated: "Mr. Raso has prepared two resolutions . . . one denying the Special Use Permit and one approving the Special Use Permit, depending upon the decision of the Commissioners. [. . .] So I have them both available. A motion to approve or a motion to deny would be in order." (AR 584.) Thus, even if approval of the written resolution was required at an open meeting, such requirement was satisfied here.

Plaintiff further argues that "[t]he undisputed facts show that the purported written decision simply does not reflect any of the discussion at the public hearing conducted on November 15, 2011." (Doc. # 29 at 5.) But this argument is beside the point, as the

BOCC voted at that meeting to continue the discussion of Plaintiff's SUP application until November 17, 2011. (AR 573.) At the November 17, 2011 meeting, Commissioner Jeff Chostner stated, "I have reviewed staff recommendations on this, and based on the totality of the record, looking at all the information that was available to us, I support . . . staff's recommendation, and, therefore, I would move to deny the appeal." (AR 584.) Chairman John B. Cordova seconded the motion (*id.*), and eventually all three Commissioners voted in favor of Commissioner Chostner's motion. (AR 589.) Because the written resolution incorporates the staff recommendations underlying Commissioner Chostner's motion, Plaintiff's argument is unavailing.

Plaintiff's position is further undercut by its citation to *USOC of Greater Iowa, Inc. v. City of Bellevue*, 279 F. Supp. 2d 1080 (D. Neb. 2003). In *City of Bellevue*, the court determined that the "in writing" requirement had not been satisfied where "[t]he minutes of the City Council meeting reflect only that the application [for a conditional use permit] was unanimously denied on a roll call vote" and "[n]o other writing states the final decision." *Id.* at 1085. Unlike in *City of Bellevue*, the denial of Plaintiff's SUP application was explained in detail by the resolution and incorporated staff report forwarded to Plaintiff by the BOCC on November 22, 2011. As such, the BOCC explained the reasons for its denial sufficiently enough to allow the Court to evaluate the evidence in the record supporting those reasons. It is to this task that the Court now turns.

**B.      TELECOMMUNICATIONS ACT: SUBSTANTIAL EVIDENCE**

Other than the "narrow limitations set forth in 42 U.S.C. § 332(c)(7)(B), '[t]he Telecommunications Act expressly preserves local zoning authority over the placement, construction and modification of personal wireless service facilities.'" *City of Broken Arrow*, 340 F.3d at 1132 (quoting *Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus*, 197 F.3d 64, 68 (3d Cir. 1999)). In addition to the "in writing" requirement discussed above, denials of a "request to place, construct, or modify personal wireless service facilities" must be "supported by substantial evidence contained in a written record." 42 U.S.C. § 332(c)(7)(B)(iii).

The substantial evidence requirement "does not affect or encroach upon the substantive standards to be applied under established principles of state and local law." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) (internal quotation marks and citation omitted). Instead, substantial evidence review under the TCA is "centrally directed to those rulings that the Board is expected to make under state law and local ordinance in deciding on variances, special exceptions and the like." *Todd*, 244 F.3d at 58 (quotation marks and citation omitted). Accordingly, the Court "look[s] to the requirements set forth in the local zoning ordinance to ascertain the substantive criteria to be applied." *City of Broken Arrow*, 340 F.3d at 1133. As such, the Court's task is to "determine whether the [local authority's] decision, as guided by local law, is supported by substantial evidence." *Borough of Ho-Ho-Kus*, 197 F.3d at 72.

Before doing so, however, the Court notes that the scope of review under the substantial evidence standard is "quite narrow." *City of Broken Arrow*, 340 F.3d at 1133; *Ready Mixed Concrete Co. v. N.L.R.B.*, 81 F.3d 1546, 1551 (10th Cir. 1996); *Am. Trucking Ass'ns, Inc. v. I.C.C.*, 703 F.2d 459, 462 (10th Cir. 1983) ("It is axiomatic that the scope of review by an appellate court of a Commission decision is a narrow one."). To be sure, the Court's review, although highly deferential, "is not a rubber stamp." *Todd*, 244 F.3d at 58 (quotation marks and citation omitted). Rather, the Court seeks to ascertain whether the evidence in the record is such that "a reasonable mind might accept [it] as adequate to support the conclusion reached" by the local authority. *City of Broken Arrow*, 340 F.3d at 1133 (quotation marks and citation omitted). "Substantial evidence requires more than a scintilla but less than a preponderance." *Id.* (quotation marks and citation omitted). Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Curtis, Inc. v. I.C.C.*, 662 F.2d 680, 685 (10th Cir. 1981). Also, council or board members "are not technocrats, and substantial evidence review does not require that the arguments and determinations be stated with exacting precision so long as the ultimate conclusion is undergirded by reasonable evidence." *United States Cellular Corp. v. Bd. of Adjustment of City of Seminole*, 180 Fed. Appx. 791, 801 (10th Cir. 2006) (unpublished). Finally, the party seeking to overturn the local authority's decision

bears the burden of showing that such decision is not supported by substantial evidence. *Sprint Spectrum*, 59 F. Supp. 2d at 1105.

Pueblo County's land use regulations do not have any specific approval criteria unique to applications for telecommunications towers. As such, the Court's review hinges on § 17.140.050 of the Pueblo County Code, which governs approvals for SUP applications. Section 17.140.050 requires compliance with the following standards:

> A. The requested use is a use listed as a special use in the zone district in which the parcel is located. [. . .];
> B. The granting of the Special Use Permit will not substantially modify the Land Use plan or the intent, purpose, and spirit of this Title.
> C. The Special Use Permit proposal incorporates reasonable means to create an environment harmonious with that of the surrounding properties.
> D. The Special Use Permit will not adversely affect the public health, safety, or welfare.

(AR 600.) The BOCC's resolution and incorporated staff memorandum concede that Plaintiff's requested use "does fall within the permissible uses-by-review for the property as zoned . . . ." (AR 592.) Therefore, the Court begins its review with the subparagraph B criteria listed above.[4]

---

[4] Before doing so, however, the Court addresses Plaintiff's assertion that "[t]he Pueblo County Code's criteria as applied to the Application for a telecommunication tower in this case fail as a matter of law because no objective standards assure rationality and consistency in decision-making." (Doc. # 26 at 8.) Such an attack conflicts with the requirement under the TCA to determine whether the local authority's decision comports with "the objective criteria in existence" at the time of the decision. *T-Mobile Cent., LLC v. Unified Gov. of Wyandotte Cnty.*, 546 F.3d 1299, 1308 (10th Cir. 2008) (quotation marks and citations omitted). Instead, as indicated by the cases Plaintiff cites, its argument pertains to a challenge under Colo. R. Civ. P. 106(a)(4) that the local authority "exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law." *See, e.g.*, *Beaver Meadows v. Bd. of Cnty. Comm'rs*, 709 P.2d 928, 929 (Colo. 1985) ("Pursuant to C.R.C.P. 106(a)(4), the district court reviewed the Board's findings and resolution, and held that the Board had acted within its jurisdiction and had not abused its discretion."). However, Plaintiff has not raised such a claim in this case. (*See* Doc. # 18.) In any event, as explained in the accompanying text, the Code's criteria for SUP applications are adequate to put an applicant on notice of its requirements and to allow the Court to conduct a meaningful judicial review.

1.   <u>Modification of the Land Use Plan or the Intent, Purpose, and Spirit of this Title</u>

Plaintiff contends that granting its SUP application "will not substantially modify the land use plan or the intent, purpose and spirit" of the County's land use regulations. (Doc. # 26 at 11 (emphasis and capitalization deleted).)  However, the Court determines that substantial evidence in the record supports the opposite conclusion. Plaintiff's contention hinges on Defendant's admission that no specific master plan has been developed for the area in which Plaintiff was hoping to construct its tower. (*See* AR 433.)  Plaintiff, thus, argues rhetorically, "how can approval of a telecommunications tower modify a plan that does not exist?" (Doc. # 26 at 11.)  On that point, Plaintiff's argument is fair enough, but it misses entirely the second part of the inquiry – *i.e.*, whether the SUP will substantially modify "the intent, purpose, and spirit of this Title." On that question, the staff memorandum explains that the purpose of A-1 Zone Districts, such as the one pertaining to Plaintiff's SUP application, is to "retain and promote the appropriate use of dry range and irrigated lands and encourage open use of the land in keeping with its natural characteristics and agricultural functions." (AR 433; *accord* AR 595.)  The memorandum further indicates that, consistent with this purpose, the subdivision was originally intended for small-lot residential development. (AR 433.) Accordingly, the memorandum states that "the establishment of a telecommunications tower . . . within a 3,500 square foot leased parcel of land within a 0.58 . . . acre parcel of land originally intended for residential development is not consistent with the intent, purpose and spirit of this Title." (*Id.*)  Likewise, the BOCC's resolution states that

granting Plaintiff's SUP application would substantially modify "the intent, purpose and spirit of the Pueblo County Code." (AR 592 (emphasis deleted).)  A review of Plaintiff's application materials illustrates the incompatibility of Plaintiff's desired use of the land with the intent, purpose, and spirit of the County's land use regulations. In addition to the 180-foot tower, which would be "initially equipped with twelve panel antennas and four microwave dishes," Plaintiff proposed constructing a related accessory building, installing a 1,000 gallon buried propane tank, and surrounding all of it with a six-foot high security fence. (AR 438.)  Accordingly, the Court agrees with Defendant's assessment that "[t]he industrial nature of a cell tower and related facilities does not fit within the agricultural purposes of the A-1 Zoning or the residential character of the approved . . . [s]ubdivision." (Doc. # 30 at 13.)  Thus, despite the absence of a specific master plan for the subdivision, a reasonable mind could accept the BOCC's description of the purpose of A-1 Zoning as adequate to support is denial of Plaintiff's SUP application.

Because substantial evidence supports the BOCC's determination that Plaintiff had not complied with this standard, the Court's analysis need not continue, since compliance with each of the enumerated standards is required. (*See* AR 600.) However, out of an abundance of caution, the Court will also address the BOCC's determination regarding public health, safety, or welfare.

### 2. Public Health, Safety, or Welfare

Plaintiff further argues that, with regard to considering public health, safety, and welfare, the BOCC's decision is "devoid of any substantive basis which would provide [Plaintiff] notice of the standards it had to meet to obtain approval." (Doc. # 26 at 12.) The Court again disagrees.

The October 26, 2011 staff memorandum specifically addresses the requirement that approval of a SUP requires no detrimental effect to "public health, safety, or welfare." (AR 434.) First, the memorandum raises a concern over whether a catastrophic occurrence – such as a tower collapse or weather event – could harm "the owners of adjacent parcels of land" or the improvements on their land, such as power lines, telephone poles, etc. (*Id.*) In doing so, the memorandum explains that a "1:1 setback from all property lines equivalent to the overall height of the tower had routinely been imposed." (*Id.*) The memorandum goes on to explain that the "proposed tower would be setback approximately 35-55 feet from . . . two (2) platted but unimproved adjacent roadways." (*Id.*) It continues, "[a]lthough these proposed setbacks adhere to the setbacks established for structures in the A-1 Zone District, these setbacks were established with a 5-40 acre parcel in mind, not a 3,500 square foot leased parcel" like Plaintiff's. (*Id.*) As such, the memorandum states that requiring "a more stringent setback . . . would protect the public health, safety and welfare of the adjacent land owners as well as those permanently established improvements in the event of a catastrophic event." (AR 435.) Finally, the memorandum notes that: the Pueblo County

Planning Commission had recently approved another application from Plaintiff in a different area after imposing a 1:1 setback; and "there are other alternative parcels contained within [Plaintiff's] search area that are larger and would be better suited to accommodate the development of the proposed use to ensure the safety of the adjacent land owners and the motoring public along the platted roadway system."  (*Id.*)

In addition to the memorandum, the BOCC's resolution states that "[t]he granting of the Special Use Permit will also adversely affect the public welfare."  (AR 592.) The resolution further notes the BOCC's agreement with objections filed by the City of Pueblo's Planning and Zoning Commission, including: "the potential negative impact the establishment of the tower at this location may have on . . . future economic development efforts because of visual blight; the obtrusiveness of the facility on the Eastwood Heights neighborhood; and the City of Pueblo's desire to protect and promote that area along Colorado State Highway Nos. 47 and 96 as evidenced by the significant new improvements made along these two (2) major transportation corridors."  (AR 593.)

Plaintiff asserts that Defendant cannot rely on the concern about a catastrophic occurrence because the evidence in the record is "directly contrary to the unsubstantiated concerns regarding the collapse of the tower . . . ."  (Doc. # 31 at 7.) In support of this assertion, Plaintiff cites to an exhibit it had submitted to the BOCC during its appeal.  (*See id.*)  The exhibit states that "[t]ower failures are very rare" and that "[i]f there were a total collapse of a tower, it would likely fall within a distance less

than or equal to 50'." (AR 386.)  However, the exhibit also explains that tower failures do occur – typically "as a result of improper installation or erection, vandalism, or an act of God . . . ." (*Id.*)  Further, Defendant points to evidence in the record which indicates that Plaintiff's proposed tower would likely fail given a sufficiently severe tornado.  (*See* AR 465.)  Accordingly, the Court disagrees with Plaintiff's characterization of the evidence as only favoring its position.  Rather, the BOCC was also faced with some evidence that, although quite rare, towers can collapse.  Moreover, Plaintiff cites no case, nor is the Court aware of any, requiring the local authority to hire its own experts to assess the safety concerns brought about through an SUP application.  In fact, courts have expressed "doubt that Congress intended local zoning boards to pay for experts . . . ." *Broken Arrow*, 340 F.3d at 1137-38 (quoting *Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals*, 297 F.3d 14, 24 (1st Cir. 2002)).  Further, because of the small size of the residential lot on which Plaintiff's tower would be situated, the above-mentioned discussion of larger parcels and 1:1 setbacks provides useful context for the concerns regarding a tower collapse.  As such, the BOCC reasonably accepted the staff's recommendation to deny the SUP application on the basis of these safety concerns.[5]

---

[5]  In its substantial evidence section, Plaintiff also asserts that "the process for considering [its SUP] application was fatally flawed" because the November 10, 2011 work session constituted an *ex parte* communication to the decision-maker. (Doc. # 26 at 14 (emphasis and capitalization deleted).)  The Court agrees with Defendant that this is a "thinly disguised attempt [by Plaintiff] to renew its procedural due process claim, which was voluntarily dismissed in its Amended Complaint." (Doc. # 30 at 14 (citing Doc. # 18 at p.9).)  Other than the "in writing" and substantial evidence inquires addressed above, the TCA's only other procedural requirement is that local authorities must "act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."  47 U.S.C. § 332(c)(7)(B)(ii); *see also City of Broken Arrow*, 340 F.3d at 1132.  That

Accordingly, substantial evidence in the record supports both of the reasons discussed above for Defendant's decision to deny Plaintiff's SUP application. Therefore, summary judgment in Defendant's favor on Plaintiff's TCA claims is appropriate.

**C.     COLORADO'S OPEN MEETINGS LAW**

Because the Court has disposed of all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's final claim, which arises under Colorado's Open Meetings Law.  (Doc. # 18 at 10-12.)  Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, a federal court may decline to exercise supplemental jurisdiction over an otherwise related claim under subsection (a) when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Indeed, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise

---

requirement is not implicated here.  Thus, under the TCA, no other procedural inquiries are required.  Regardless, Plaintiff's argument is unpersuasive.  Although the parties dispute whether Plaintiff was provided with actual notice of the work session, Plaintiff does not dispute that the session was open to the public and that an agenda of the meeting – which showed that Plaintiff's SUP application would be discussed – was posted at the Pueblo County Courthouse. (*See* Doc. # 25 at 4-5; Doc. # 29 at 2.)  Moreover, as Plaintiff's citation to the transcript of the work session indicates, the session occurred on the record.  (*See* AR 405-420.)  Further, as a legal matter, Plaintiff's characterization of what occurred as *ex parte* lacks substance, given that Plaintiff was already aware of the staff's concerns through the various memoranda it had previously produced.

jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotation marks and citation omitted); *see also Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) ("the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice"); *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."). Because the Court discerns no compelling reason why it should retain jurisdiction of Plaintiff's state-law claim, and in light of the foregoing authorities, the Court declines to exercise supplemental jurisdiction over Plaintiff's final claim and thus, dismisses it without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (noting that dismissals for lack of jurisdiction should be without prejudice because the court has not reached a disposition on the merits of the underlying claim).

## IV.  **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Because the Court has determined that Defendant is entitled to summary judgment, Plaintiff's motion for summary judgment, in which the Court would view the record and draw inferences therefrom in the light most favorable to Defendant, is denied as moot.

## V.  **CONCLUSION**

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 25) is GRANTED WITH PREJUDICE as to Plaintiff's "in writing" claim

under the TCA and WITHOUT PREJUDICE as to Plaintiff's claim under Colorado's Open Meetings Law. It is

FURTHER ORDERED that Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. # 30), which the Court treated as a cross-motion for summary judgment on Plaintiff's substantial evidence claim under the TCA, is GRANTED WITH PREJUDICE. It is

FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (Doc. # 26) is DENIED AS MOOT. It is

FURTHER ORDERED that the "Status Conference/Hearing" set for February 28, 2013, is VACATED. It is

FURTHER ORDERED that, while each party shall bear its own attorneys' fees, Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of the Court within ten days of the entry of judgment. Finally, it is

ORDERED that this case is DISMISSED.

DATED: February __22__, 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge